David R. Flyer, Bar #100697
Raquel Flyer, Bar #282248
**FLYER & FLYER, A Professional Law Corporation**
4120 Birch St., Ste. 101
Newport Beach, CA 92660
(949) 622-8445
(949) 622-8448 (fax)
davidflyer@flyerandflyer.com
raquelflyer@flyerandflyer.com

Attorneys for Plaintiff
NORMAN HOWARD ELLIS

IN THE UNITED STATES DISTRICT COURT FOR

THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| NORMAN HOWARD ELLIS,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California, and DOES 1 TO 10,<br><br>　　　　Defendants. | Case No. 8:22-cv-01995-JVS (PLAx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AGAINST ENFORCEMENT OF THE "GOOD MORAL CHARACTER" REQUIREMENT OF** *CAL. PEN. CODE* **§26150(a)(1) [FRCP 65]**<br><br>[Filed concurrently are: Notice of Motion, Declaration of Norman Howard Ellis and Request for Judicial Notice]<br><br>U.S. District Judge James V. Selna<br>Courtroom:　　　10C<br>Date of Hearing on Motion:<br>　　　　　　　February 13, 2023<br>Time:　　　　　1:30 p.m.<br><br>Complaint filed:　October 31, 2022 |

**TABLE OF CONTENTS**

Page No.

I. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. Legal Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. Likelihood of Success on the Merits . . . . . . . . . . . . . . . . . . . . . . . . 6

        i. The Second Amendment's Plain Text Covers CCW Licenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        ii. Our Nation's Historical Traditions . . . . . . . . . . . . . . . . . . . . . 8

    B. There is a Strong Showing of Irreparable Harm . . . . . . . . . . . . . . . 13

    C. The Balance of Equities and Service of Public Interest Tips in Plaintiff's Favor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V. Conclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

Page Nos.

Federal Cases

*Antonyuk v. Bruen*, 2022 WL 3999791 (N.D.N.Y. Aug. 31, 2022) . . . . . . . . . . . . . 14

*District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008) . . . . . . . . . . . . 7

*Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073 (9th Cir. 2014) . . . . . . . . . . . . . . . 5

*Koons v. Reynolds*, 2023 WL 128882 (D. NJ January 9, 2023) . . . . . . . . . . . . . . . 14

*Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558 (6th Cir. 1982) . . . . . . . . . . 13

*McDonald v. Chicago*, 130 S.Ct. 3020 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . 13

*N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S.Ct. 2111 (2022) . . . 4,5,6,7,8,9,
  11,12,13,14

*Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Loc. 200,
  AFL-CIO*, 611 F.3d 483 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States of America v. Perez-Gallan*, 2022 WL 16858516
  (W.D. Tex. 11/10/2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,11

Statutes

*California Penal Code* (CPC) §26150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,6,14

*California Penal Code* §§25400, 25850, and 26350 . . . . . . . . . . . . . . . . . . . . . . . . 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND

Plaintiff NORMAN HOWARD ELLIS, a 69-year-old U.S. Citizen, submitted an application for a Concealed Carry Weapon ("CCW") license on November 11, 2021. [See Declaration of Norman Howard Ellis ¶2]. The reason for the application was based on Plaintiff being an avid hunter and his concerns for personal safety. Plaintiff has an aircraft modification business which requires him to go into certain parts of airport cities that are not known for providing for personal safety. *Id*. He carries with him expensive equipment for his business and believes he needs protection. *Id*. In his application, Plaintiff disclosed that over forty-years ago he had misdemeanor convictions for vandalism, drunk driving, taking an aircraft without owner's consent, and trespassing. *Id*. Even longer ago, he had criminal charges that were dismissed or did not lead to conviction. *Id*. With the passage of forty years, he has been rehabilitated and has had no issues with the law since then. *Id*. He was pulled over in traffic in 2012, but that did not result in any ticket. *Id*. Despite the passage of time from his convictions, on August 2, 2022, his application for a CCW license was denied, with the stated reason: "The requirement of good moral character was not satisfied due to past criminal history." *Id*.

Plaintiff filed a Complaint challenging the denial of his license as the application of *California Penal Code (CPC)* §26150, violates his civil rights. *Id*. at ¶3. Plaintiff's Complaint is based on the June 23, 2022 opinion of the United States Supreme Court in *N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S.Ct. 2111, 2156 (2022) which held that New York's Penal Code requirement that only granted licenses to carry concealed weapons to those who could demonstrate that they had "proper cause" for obtaining a handgun carry license, violated the Second and Fourteenth Amendments by impermissibly granting a licensing officer the discretion to deny a license to a law-abiding citizen on a perceived lack of a special need for self-protection distinguishable from that of the general community.

Following the United States Supreme Court's decision in *Bruen*, Defendant issued a "Legal Alert" on June 24, 2022, to all California District Attorneys, Police Chiefs, Sheriffs, County Counsels and City Attorneys, instructing them that post-*Bruen* issuing authorities should no longer require proof of good cause for the issuance of a public-carry license. However, he instructed that "issuing authorities must still require proof that 'the applicant is of good moral character,' . . ." [See Request for Judicial Notice, Ex. "A" attached here].

Based on Defendant's instruction, Plaintiff has no reasonable avenue to obtain a CCW until Defendant is ordered to follow the law as interpreted by *Bruen*.

## II.  LEGAL STANDARDS

Federal Rules of Civil Procedure Rule 65(a), and (b) governs preliminary injunctions. It is well established that, to determine whether an injunction is "just and proper," courts apply the "familiar set of four equitable factors: the movant's likelihood of success on the merits; the possibility of irreparable injury to the moving party; the extent to which the balance of hardships favors each party; and whether the public interest will be advanced by granting the preliminary relief." *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Loc. 200, AFL-CIO*, 611 F.3d 483, 489–90 (9th Cir. 2010).

When the government is a party, the balance of equities factor and the public interest factor merge. *Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014). "Under our 'sliding scale/approach, a stronger showing of one element may offset a weaker showing of another, as long as plaintiffs "establish that irreparable harm is likely." *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017).

## III.  STANDING

Plaintiff has standing to seek a preliminary injunction. To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. Here, Plaintiff has (1) been injured by the

denial of his CCW license, (2) based on the requirements imposed by the Office of the Attorney General, and (3) this injury will be redressed if Defendant is required to eliminate the "good moral character" requirement of *Penal Code* §26150.

## IV. LEGAL ANALYSIS

### A. Likelihood of Success on the Merits

*CPC* §26150's requirement of "good moral character" is unconstitutional. Although, California prohibits the open or concealed carriage of a handgun, whether loaded or unloaded in public locations, *Penal Code* §§25400, 25850, and 26350, one may apply for a license in California to carry a concealed weapon in the county in which he or she works or resides, *Id. Penal Code* §26150, provides in relevant part:

> (a) When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county may issue a license to that person upon proof of all of the following:
>
> (1) The applicant is of good moral character.
>
> (2) Good cause exists for issuance of the license.
>
> (3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business.
>
> (4) The applicant has completed a course of training as described in Section 26165.

*Bruen* struck down a New York law for concealed carry, with similar requirements to California's, *Id*. at 2123:

> A license applicant who wants to possess a firearm *at home* (or in his place of business) must convince a "licensing officer"—usually a judge or law enforcement officer —that, among other things, he is of good moral character, has no history of crime or mental illness, and that "no good cause exists for the denial of the license." §§ 400.00(1)(a)–(n) (West Cum. Supp. 2022). If he wants to carry a firearm *outside* his home or place of business for self-defense, the applicant must obtain an unrestricted license to "have and carry" a concealed "pistol or revolver." § 400.00(2)(f). To secure that license, the applicant must prove that "proper cause exists" to issue it. *Ibid.* If an applicant cannot make that showing, he can receive only a "restricted" license for

public carry, which allows him to carry a firearm for a limited purpose, such as hunting, target shooting, or employment.

California, similar to New York, is one of only six States and the District of Columbia, that have "may issue" licensing laws, "under which authorities have discretion to deny concealed carry licenses even when the applicant satisfies the statutory criteria, usually because the applicant has not demonstrated cause or suitability for the relevant license." *id*. at 2123-2124.

The analysis of the merits of Plaintiff's claims is based on the one-step, burden-shifting approach as set forth in *Bruen*, *supra*, 142 S.Ct. 2111, 2119. The Court must first ask whether the conduct in question is covered by the plain text of the Constitution. "It is undisputed that [Plaintiff] [an] ordinary, law-abiding, adult citizen[]-[is] part of 'the people' whom the Second Amendment protects." *Id*. No party can dispute that "handguns are weapons 'in common use' today for self-defense." *Id*. The burden then shifts to Defendant to demonstrate that the "good moral character" requirement of CPC §26150 is consistent with this Nation's historical tradition of firearm regulation. *Id*.

### i. The Second Amendment's Plain Text Covers CCW Licenses

*Bruen* applied *District of Columbia v. Heller*, 128 S.Ct. 2783 (2008) (statutes banning handgun possession in the home and statute containing prohibition against rendering any lawful firearm in the home operable for purpose of immediate self-defense violated the Second Amendment) and *McDonald v. Chicago*, 130 S.Ct. 3020 (2010) (Second Amendment right to keep and bear arms is fully applicable to the States by virtue of the Fourteenth Amendment), to determine whether a firearm regulation is consistent with the Second Amendment, with *Bruen, supra*, 142 S.Ct. 2111, 2129-2130, holding:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is

consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Applying the constitutional standard endorsed in *District of Columbia v. Heller*, 554 U.S. 570, 592, 128 S.Ct. 2783 (2008), the *Bruen* court had "little difficulty" concluding that the plain text of the Second Amendment protected the petitioner's "proposed course of conduct–carrying handguns publicly for self-defense." *Id*., at 2134.

Plaintiff's misdemeanors from over 40-years ago should not compel a different result than *Bruen*. See *United States of America v. Perez-Gallan*, 2022 WL 16858516, *1 (W.D. Tex. 11/10/2022), where a defendant entering the border patrol checkpoint disclosed that he had a pistol and the border patrol agents found he was subject to a court order stemming from an arrest for assault. The defendant was also the subject of a separate restraining order and was indicted under 18 U.S.C. § 922(g)(8), which makes it a crime to possess a firearm while subject to a court order. *Id*. The *Perez-Gallan* district court rejected the argument that the right to keep and bear arms belonged only to "law-abiding responsible citizens." *Id*. at *7:

> First, the crux of *Heller's* reasoning—that the Second Amendment enshrined an individual right—highlights that "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all *members of the political community*, not an unspecified subset." So the *Heller* Court's "determination of a matter of law pivotal to its decision" defined "the people" as "members of the political community," not "law-abiding, responsible citizens."

The determination of "good moral character" does not precede the application of the Second Amendment, but follows it, Defendant must rebut the presumption of Second Amendment protection by demonstrating CPC §26150's "good morals" requirement is consistent with this Nation's historical tradition of firearm regulation.

**ii.    Our Nation's Historical Traditions**

Although *Bruen* addressed the "proper cause" requirement, the same result

should apply to California's "good moral character" requirement. Reviewing the same historical tradition of our Nations' firearm regulation applied in *Bruen*, compels the same result here. *Bruen* addressed historical sources from the late 1200s to the early 1900s, which the court categorized as: "(1) medieval to early modern England; (2) the American Colonies and the early Republic; (3) antebellum America; (4) Reconstruction; and (5) the late-18th and early 20th centuries." *Id*., at 2135-2136.

First, the *Bruen* respondents and their *amici* pointed to medieval English regulations from as early as 1285, which during a time of "acute disorder" provided that Englishmen could not "come before the King's Justices, or other of the King's Ministers doing their office, with force and arms, nor bring no force in affray of the peace, nor to go nor ride armed by night nor by day, in Fairs, Markets . . ." *Id*., at 2139. As *Bruen* pointed out that ancient statute's focus on armor "made sense given that armor and lances were generally worn or carried only when one intended to engage in lawful combat," *Id*., at 2140. There was no evidence "suggesting the Statute applied to the smaller medieval weapons that strike us as most analogous to modern handguns." *Id*.

When handguns were introduced in England, Henry VIII proscribed them "not primarily from concerns about their safety but rather their inefficacy." *Id*. By the time "Englishmen began to arrive in America in the early 1600s, the public carry of handguns was no longer widely proscribed." *Id*.  Later, the "predecessor to our Second Amendment" was written into the 1689 English Bill of Rights. *Id*., at 1241.

This first category of historical sources *Bruen* reviewed failed to show that "English law would have justified restricting the right to publicly bear arms suited for self-defense only to those who demonstrate some special need for self-protection." *Id*. at 1242. Similarly, there is nothing in that history which shows there were restrictions placed on only individuals who could meet a subjective standard of "good moral character" so as to compel a different result here.

The second category of historical sources in *Bruen* traced the Colonial to early

Republic period, where there were only three restrictions. *Id*. Two were substantially identical in authorizing justices of the peace to arrest "all Affrayers, Rioters, Disturbers, or Breakers of the Peace, and such as shall ride or go armed Offensively" *Id*., at 2142-2143. However, these statutes were "[f]ar from banning the carrying of any class of firearms, they merely codified the existing common-law offense of bearing arms to terrorize the people." *Id*. at 2143. The third statute, "prohibited the concealed carry of 'pocket pistol[s]' or other 'unusual or unlawful weapons,'" *Id*. *Bruen*, found this statute unpersuasive given its expressed limitations on what weapons were covered. *Id*.

The takeaway from the second category of historical sources is that they banned bearing arms in a way that spreads "fear" or "terror." *Id*., at 2145. There is no reason to suggest that a subjective standard of "good moral character" can be read into the intent to prevent "fear" or "terror." Preventing "fear" or "terror" is already met by prohibiting convicted felons from acquiring CCW licenses.

In the third category of historical sources, the antebellum period similarly had restrictions on going armed "to the terror of the people." *Id*. There were also statutory restrictions in certain states, but when legally challenged the courts interpreted them as clearly not prohibiting all public carry as that would violate the constitutional right to bear arms. *Id*. at 2147. The surety statutes in the mid-19th century "*presumed* that individuals had a right to public carry that could be burdened only if another could make out a specific showing of 'reasonable cause to fear an injury, or breach of the peace.'" *Id*., at 2148. Thus, "a showing of special need was required only *after* an individual was reasonably accused of intending to injure another or breaching the peace. And, even then, proving special need simply avoided a fee rather than a ban." *Id*., at 2148-2149. If anything these historical references support that even if someone were found to have bad "moral character" they could still publicly carry if they paid a surety.

On the fourth category, around the adoption of the Fourteenth Amendment, the

Texas Supreme Court held "that requiring any pistol-bearer to have 'reasonable grounds fearing an unlawful attack on [one's] person' was a 'legitimate and highly proper' regulation of handgun carriage." *Id*. Although, this holding may have supported New York's proper-cause requirement in *Bruen*, the court concluded it was an outlier, *Id*. Certainly the requirement of "fearing an unlawful attack" cannot be equated to having "good moral character." On the final category, *Bruen* concluded that "territorial restrictions" did not overcome the "overwhelming evidence of an otherwise enduring American tradition permitting public carry." *Id*., at 2154. This American tradition must extend beyond a subjective finding of "good moral character."

Also, instructive is returning to *Perez-Gallan, supra*, 2022 WL 16858516, *1 (W.D. Tex. 11/10/2022), where the district court noted that "glaringly absent from the historical record–from colonial times until 1994–are consistent examples of the government removing firearms from someone accused (or even convicted) of domestic violence." *Id*. at *6. The court's historical analysis then looked to the Ninth Circuit's opinion in *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), finding a statute that prohibited domestic violence misdemeanants from possessing firearms burdened rights protected by the Second Amendment, at 1137. The "*Chovan* court noted that the first federal firearm restrictions regarding violent offenders were not passed until 1938." *Perez-Gallan, supra* 2022 WL 16858516, *7.

Compared to the statute involved in *Perez-Gallan*, Respondent's "good moral character" requirement will have a harder time finding historical support. See *Id*.:

> Based on the Second Amendment's plain text, the Court sees only two ways a firearm regulation can survive *Bruen's* scrutiny: (1) the "who" being regulated has historically been excluded from "the people," or (2) the conduct being regulated (the what, where, when, and how) has historically been excluded from "keep and bear Arms." If the regulation doesn't fall into either of those categories, the Second Amendment is unequivocal: the right "shall not be infringed."

Ultimately, "the historical record does not contain evidence sufficient to

support the federal government's disarmament of domestic abusers." *Id*., at *12. If there is no support to disarm individuals actually subject to court orders based on domestic abuse and likely physical injury, then certainly there is no support to disarm individuals who received non-violent misdemeanors over 40 years ago.

The burdensomeness of the *CPC's* "good moral character" requirement is unreasonably disproportionate to the burdensomeness of this Nation's historical laws. Defendant's application of the "good moral character" requirement, impermissibly burdens the applicant with persuading a licensing officer that he or she is of "good moral character." This departs from historical statutes, which presumed a right to carry. See *Bruen, supra*, 142 S.Ct. at 2148:

> While New York presumes that individuals have *no* public carry right without a showing of heightened need, the surety statutes *presumed* that individuals had a right to public carry that could be burdened only if another could make out a specific showing of "reasonable cause to fear an injury, or breach of the peace." [emphasis in original].

The U.S. Supreme Court also commented on "good moral character" by observing that there must be an objective standard in the law to permit determination of good moral character without reliance on the issuing officer's discretion:

> Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, "law-abiding, responsible citizens." Ibid. And they likewise appear to contain **only "narrow, objective, and definite standards**" guiding licensing officials, *Shuttlesworth v. Birmingham*, 394 U. S. 147, 151 (1969), **rather than requiring the "appraisal of facts, the exercise of judgment, and the formation of an opinion**," *Cantwell v. Connecticut*, 310 U. S. 296, 305 (1940)—features that typify proper-cause standards like New York's."

*Bruen*, 142 S. Ct. 2111, at n.9 [Emphasis added].

*CPC* §26150(a)(1) is unconstitutionally vague because it fails to provide an objective standard for determining good moral character. The unjustified burden the *CPC* places on the applicant here, is akin to New York's unconstitutional law shouldering an applicant with the burden of persuading a licensing officer that he or

she has a special need for self-protection distinguishable from that of the general community. The *CPC* cannot withstand strict scrutiny.

### B. There is a Strong Showing of Irreparable Harm

Plaintiff will likely experience irreparable harm if this Preliminary Injunction is not issued because a constitutional deprivation (even if the deprivation is for only a minimal amount of time) constitutes irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (based on defendants' representations that they believed they had authority to detain individuals solely because of their immigration status, it was reasonable for the district court to conclude that the plaintiffs faced a real possibility that they would again be stopped or detained and subjected to unlawful detention, justifying preliminary injunction).

Plaintiff will also suffer irreparable harm in terms of his diminished safety. Plaintiff is 69-years-old and due to his aircraft modification business he has to go to certain parts of airport cities that are not known for providing for personal safety. He carries with him expensive equipment for his business, he is also a landlord, and believes he needs protection.

### C. The Balance of Equities and Service of Public Interest Tips in Plaintiff's Favor

The balances of equities tips in Plaintiff's favor because the *CPC*'s "good moral character" requirement intentionally tramples the clearly enumerated Second Amendment right to bear arms outside of the home.

A Preliminary Injunction is in the public interest because the public has an interest in vindicating Second Amendment rights and preventing the egregious curtailment of those rights. *Bruen* bans the *CPC*'s additional hurdles to granting CCW licenses where there are no historical analogs. "It is in the public interest not to perpetuate the unconstitutional application of a statute." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982) (corporations entitled to preliminary

[C:\ALL FILES\A2165\Drafts\PreInjunction P&As-01pld.wpd]

injunction to prevent unconstitutional application of the Michigan Take-Over Offers Act).

There is also a strong public interest in public safety. See *Antonyuk v. Bruen*, 2022 WL 3999791, at *36-37 (N.D.N.Y. Aug. 31, 2022):

> Third, at the end of the day, however, the undersigned is left with a strong sense of the safety that a licensed concealed handgun regularly provides, or would provide, to the many law-abiding responsible citizens in the state too powerless to physically defend themselves in public without a handgun (in no small part to the doubt cast into the would-be perpetrator's mind about whether this one, in this concealed-carry state, might be armed). These include senior citizens, disabled people, and those who work late at night, especially in a city. In the words of Justice Alito,
>
> > [I]t might be somebody who cleans offices, it might be a doorman at an apartment, it might be a nurse or an orderly, it might be somebody who washes dishes. None of these people has a criminal record. They're all law-abiding citizens. They get off work around midnight, maybe even after midnight. They have to commute home by subway, maybe by bus. When they arrive at the subway station or the bus stop, they have to walk some distance through a high-crime area ....
>
> Transcript of Oral Argument at 67, *NYSRPA v. Bruen*, 142 S. Ct. 2111 (2022) (No. 20-843).50 It is this consideration, the Court finds, that would tip the scales in favor of granting Plaintiffs' motion, if they had standing.

In the most recent affirmation of *Bruen*, regarding the public interest, the district court in *Koons v. Reynolds,* 2023 WL 128882, at *23 (D. NJ January 9, 2023) granted a temporary restraining order against enforcement of new gun laws restricting concealed carry in certain "sensitive places" and set a briefing schedule for preliminary injunction, observing: "... at oral argument, this Court specifically pressed the State whether it had empirical evidence to suggest that concealed carry permit holders are responsible for gun crimes or an increase in gun crimes in New Jersey ... the State had no such evidence."

Plaintiff is required to frequent unsafe locations due to his occupations; he can foster the public safety if he is permitted to have a CCW license.

## V. CONCLUSIONS

Defendant is perpetuating the same myth that local licensing authorities should have discretion to deny an applicant based on alleged lack of good moral character, which our U.S. Supreme Court found unconstitutional in *Bruen*. Plaintiff is likely to succeed on the merits of his cause that the *CPC*'s second step requirement is invalid as a matter of law. Plaintiff is likely to suffer irreparable harm, because Defendant has directed all subordinate county sheriffs to follow his directive imposing a second step requirement. The equities tip in Plaintiff's favor since he has legitimate concerns for his safety. And, the public interest is served by blocking Defendant from relying on an unconstitutional law to bar issuance of a concealed carry permit.

Wherefore, Plaintiff prays that his motion for imposition of preliminary injunction which bars Defendant from relying on *Cal. Penal Code* §26150(a)(1), be granted, and for such further relief as may be proper.

Respectfully submitted,

FLYER & FLYER, A PROFESSIONAL LAW CORPORATION

Dated: January 10, 2023      By:    /s/ David R. Flyer
David R. Flyer
Raquel Flyer
Attorneys for Plaintiff
NORMAN HOWARD ELLIS